## FRANK E. GOWEY *vs.* CLARISSA A. GOWEY.

Middlesex.     January 18, 19, 1906. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Marriage and Divorce. Words,* "Intoxication."

On the trial of a libel for divorce under R. L. c. 152, § 1, there was evidence that the libellee for many years took a medicine called tincture of sudorific which she admitted contained opium, that her husband, the libellant, who did not know what it was, bought it for her at first in half pints and pints and later in pints and quarts, that she had the appearance of one addicted to the excessive and continued use of opium and that at times her conduct was such as fairly might be attributed to the excessive use of that drug, that the libellant did not know until a physician was called to attend the libellee in an attack of illness that the medicine contained opium, that he was told by the physician that she must have it, but to wean her from it, that they must give it to her, but in small doses and as little as possible, and that he made subsequent purchases of the medicine in order to carry out this direction. There was conflicting evidence as to whether the excessive use of opium by the libellee existed at the time the libel was served or whether she had given it up. *Held,* that a finding was justified that the libellee had contracted gross and confirmed habits of intoxication from the use of opium which existed when the libel was brought, and that there was no connivance on the part of her husband.

MORTON, J. This is a libel for divorce under R. L. c. 152, § 1, for cruel and abusive treatment, and for gross and confirmed habits of intoxication from the voluntary and excessive use of opium, morphine and other drugs. At the close of the evidence the libellee asked the judge to rule that on all the evidence the libel should be dismissed, and that the evidence

did not warrant a decree on the ground of cruel and abusive treatment, or on the ground of gross and confirmed habits of intoxication from the use of opium. The judge ruled that there was no evidence warranting a decree on the ground of cruel and abusive treatment, but refused the other requests, and granted a decree on the ground of gross and confirmed habits of intoxication caused by the use of opium and other drugs. The case is here on the libellee's exceptions to the refusal to rule as requested. All of the testimony is contained in the bill of exceptions.

It is not easy, as was said in substance in *Burt* v. *Burt,* 168 Mass. 204, to define the word "drunkenness" [in the present statute "intoxication"] as applied to the use of opium, morphine or other drugs. But the evil effects resulting from the continued and excessive use of opium or morphine are well known. They interfere as much, to say the least, with the happiness of married life, and produce other effects upon the marriage relation as deplorable as those resulting from the excessive use of intoxicating liquors. And it was the state thus resulting from their excessive use which the Legislature intended, we think, to describe by the word "drunkenness" or "intoxication" as applied to the use of opium, morphine and other drugs, and from which it intended to afford relief to the innocent party. In order to warrant a decree the evidence must be such as to justify a finding that the habit was gross and confirmed, and existed when the libel was filed. *Burt* v. *Burt, supra. McCraw* v. *McCraw,* 171 Mass. 146. But if a gross and confirmed habit is once shown to exist, the reasonable probability that it will continue to exist, furnishes, as said in *McCraw* v. *McCraw,* some ground for an inference which the court may consider in dealing with a litigated matter.

Without going into it in detail, we think that there was evidence warranting a finding that the libellee had become addicted to the excessive use of opium, and that the habit had become gross and confirmed. She took for many years a medicine called tincture of sudorific which, there was evidence tending to show, she admitted contained opium. At first the libellant, who did not know what it was, bought it for her in half pints and pints, and later in pints and quarts. There was evidence tending to show that she had the appearance of

one addicted to the excessive and continued use of opium, and that her conduct was at times such as might fairly be attributed to the excessive use of that drug. The libellee strongly contends that the evidence shows that she had given up the habit before the libel was served, and that the habit did not then exist. And there is a good deal of evidence to that effect. If the judge had so found we should not have felt at liberty to disturb the finding. But there is also evidence of a contrary nature relating to her appearance when the libel was served and previous thereto and to conversations between herself and the libellant, which, if believed, would tend to show that she was still under the control of the habit. The question is not one of the weight of the evidence. The judge had the parties and the other witnesses before him and taking the testimony as a whole we do not see how it can be said that the decree was not, as matter of law, warranted by the evidence.

The libellee contends that there was connivance on the part of the libellant. But the libellant testified that, though he knew that his wife had been taking the medicine for a long time, he did not know, till a doctor was called in to attend her in an attack of illness in June, 1900, that the medicine contained opium. He was then told by the doctor, as he testified, that she "must have it . . . but to wean her from it; that they must give it to her but in small doses, as little as possible." From this and other testimony the judge was warranted in finding, not only that there was no connivance by reason of the subsequent purchases by the libellant, but that he did and offered to do all that could be reasonably required to assist her in overcoming the habit.

*Exceptions overruled.*

*H. W. Ogden,* for the libellee.

*J. F. Cronan,* (*L. P. Sears,* with him,) for the libellant.